United States District Court

Southern District of Texas

| | | |
|---|---|---|
| Cynthia G. Condrey, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action H-17-3106 |
| | § | |
| Nancy Berryhill, | § | |
| | § | |
| Defendant. | § | |

## Opinion on Summary Judgment

### 1. Introduction

Cynthia G. Condrey brought this action for judicial review of the commissioner's final decision to deny her disability insurance benefits. The question is whether substantial evidence supports the commissioner's decision. It does.

### 2. Background

Condrey applied for disability benefits on August 27, 2014. She claimed to suffer from several physical and mental conditions, including fibromyalgia, lupus, arthritis, seizures, migraine headaches, epilepsy, neuropathy, depression, and chronic fatigue syndrome. Condrey claimed she could not sit or stand for long periods, that she could pay attention only for two to three minutes, and that she would fall asleep without realizing it. She also claimed to have an uncontrolled seizure disorder.

Condrey alleged that she became disabled in 2011, but later amended the onset date to April 30, 2014. Condrey graduated from college with a bachelor's degree in business. Before 2011 she worked as a security guard and in various administrative and office jobs.

The hearing officer found that Condrey suffers from numerous severe impairments. Because none of those impairments prevent Condrey from returning to her previous work, the hearing officer found that Condrey is not disabled.

3. *Legal Framework*

    a. *Standard of Review*

This court's review is limited to determining whether commissioner's decision is supported by substantial evidence and whether the correct legal standards were employed. *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). The court "does not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* "A decision is supported by substantial evidence if credible evidentiary choices or medical findings support the decision." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018).

### b. *Statutory and Regulatory Criteria*

The Social Security Act provides disability insurance benefits to people who have contributed to the program and have a physical or mental disability. *See* 42 U.S.C. § 423. It defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step. *Newton*, 209 F.3d at 455. First, a person who is working and engaging in substantial gainful activity is not disabled. Second, a person who does not have a severe impairment is not disabled. Third, a person whose severe impairments meet or equal an impairment in appendix 1 of the regulations is deemed disabled. The commissioner must determine the person's residual functional capacity ("RFC"), which is a determination of the most the claimant can still do despite her physical and mental limitations. The RFC is used in the fourth and fifth steps of the analysis to determine whether the claimant can perform past relevant work or any other work that is significant in the national economy.

### 4. *Analysis*

The hearing officer followed the correct legal rules, and her findings are supported by substantial evidence.

Condrey has not engaged in gainful employment since before 2011. At the second step, the hearing officer found that Condrey has severe impairments from

3

fibromyalgia, anxiety disorder, neuropathy, seizures, degenerative joint disease, obesity, and prescription drug habituation. None of those impairments meet one in the listings, however. The hearing officer determined Condrey's RFC. While she does have limitations, Condrey can lift twenty pounds occasionally and ten pounds frequently, and she can sit, stand, and walk six hours in an eight-hour day. Based on that RFC, the hearing officer found at the fourth step that Condrey could return to her past work as a security guard, administrative clerk, or receptionist. She is therefore not disabled.

In reaching her decision, the hearing officer considered Condrey's medical and psychological records. She also considered the hearing testimony of Condrey and the vocational expert.

Condrey made several statements at the hearing and to her medical providers that the hearing officer construed to mean she had overstated the severity of her medical conditions. She lived in a second-floor apartment that was not equipped for the handicapped. She lifted boxes when she moved into the apartment in August 2015. She was able to lift her thirty-five-pound dog. She cared for and cleaned up after her dog.

The hearing officer considered medical examinations conducted between 2013 and 2016 that showed normal physical and psychological results. She had a normal brain MRI and a normal EEG in May 2013. Her neurological examination was normal in February 2014 and indicated full grip strength and normal gait. That same exam also showed that she had normal attention span and concentration. In December 2016 (after the hearing) Condrey's physical

examination showed that her muscle strength, tone, and gait were intact, with no evidence of abnormalities.

The hearing officer relied on the analysis of two state agency consultants in formulating the residual functional capacity. Those consultants reviewed Condrey's medical records through April 2015, including hospital records, treating physician records, and a report from a consultative examiner hired by the Commissioner. The agency consultants found, among other things, that Condrey could lift twenty pounds occasionally, and ten pounds frequently, that she could stand or walk six out of eight hours, and sit six out of eight hours. These findings are consistent with the RFC as determined by the hearing officer. The hearing officer explained in her decision that Condrey does suffer from several limitations, but those limitations were accounted for in the RFC. The vocational expert testified that Condrey's RFC would permit her to return to her past work.

Condrey argues that the hearing officer discounted the opinions of her treating physicians without stating adequate reasons. The hearing officer is required to analyze each of the factors set forth in 20 C.F.R. § 404.1527(c) before declining to give any weight to the opinion of a treating physician. *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). Those factors include the nature and length of the treating relationship, whether the opinion is supported by evidence, and whether the treatment provider is a specialist. On the other hand, if the hearing officer's failure to address the factors is harmless, remanding on that basis makes little sense. *Rollins v. Astrue*, 464 F. App'x. 363, 358 (5th Cir. 2012) (unpublished) (explaining that procedural perfection in administrative

proceedings is not required, and that remand is unnecessary unless the substantial rights of a party have been affected).

Dr. Teresa Tarver is a consultative examiner retained by the Commissioner to perform a psychological evaluation of Condrey. The hearing officer explained that while Condrey was "alert and oriented with an adequate fund of knowledge," and "demonstrated concrete abstract goal directed thinking," Dr. Tarver concluded that Condrey was mildly impaired and suffered from an "unspecified mild neurocognitive disorder." The hearing officer concluded that Dr. Tarver's opinion should be given minimal weight because it was inconsistent with the examinations by the treating physicians. The hearing officer did not explicitly address any of the other factors set forth in 20 C.F.R. § 404.1527(c). Doing so was unnecessary. It is obvious that Tarver saw Condrey only once. Tarver was hired as a specialist. The opinion itself indicates that Tarver did not review any records in forming her opinion. The hearing officer properly weighed and discounted Dr. Tarver's opinion.

Dr. Omotoloa Hope opined that Condrey could stand less than two hours in an eight-hour day and sit only two hours in an eight-hour day. Dr. Hope also stated that Condrey could occasionally lift less than ten pounds, and never lift more than that. The hearing officer gave Dr. Hope's opinion little weight, noting that the opinion was not supported by any objective diagnostic or clinical findings. The opinion was also based on Condrey's self-reported symptoms. The hearing officer noted throughout her decision that Condrey's allegations about her symptoms were inconsistent with the evidence before the Commissioner. As for Condrey's mental status, Dr. Hope stated that Condrey was quite limited, and

would miss work frequently. The hearing officer gave this opinion very little weight because, among other things, Dr. Hope did not have a lengthy treating relationship with Condrey, and the opinion was not consistent with the record. While the hearing officer did not explicitly work through each factor, it is clear to the court that she understood and applied the regulation.

The same is true of the hearing officer's rejection of Dr. Lisa Davis's opinion. Davis said that Condrey could sit, stand and walk less than two hours per day, that she would need eight breaks in an eight-hour day, and that Condrey could never lift less than ten pounds. The hearing officer rejected this opinion because it was inconsistent with the examinations and radiographic data. The hearing officer also noted that it was Dr. Davis who gave Condrey a note permitting her to have a service dog. The hearing officer thought this was suspect because Dr. Davis did not explain Condrey's need for a service animal, Condrey received no training to handle the dog, and Condrey owned the dog for eight years before designating it a service animal. The hearing officer had no reason to give Dr. Davis's opinions any weight at all, and further explicit weighing and balancing would have made no difference.

Finally, Condrey points out that the hearing officer did not mention Dr. Welton Hill's opinion at all. Dr. Hill stated that Condrey could sit and stand less than two hours in a day, would need to take eight thirty-minute breaks per day, and could only occasionally lift ten pounds. The medical records supporting Dr. Davis's opinion consist mainly of Condrey's self-reported symptoms. As with the other opinions, Dr. Hill's opinion is entirely inconsistent with the record. There is no need to remand this case for an explicit evaluation of Dr. Hill's opinion

because the hearing officer would give it little weight, as she did with the other opinions.

Condrey argues that the hearing officer did not account for Condrey's headaches in the determination of the residual functional capacity. The hearing officer discussed Condrey's migraine headaches throughout her decision. The medical records that the hearing officer considered are replete with discussion of Condrey's migraine headaches. It cannot be said that the hearing officer ignored Condrey's headache problem in formulating the residual functional capacity.

5. Conclusion

The commissioner's decision denying Condrey's claim for disability benefits is supported by substantial evidence and will be affirmed. Cynthia G. Condrey will take nothing from Nancy Berryhill.

Signed on May 2, 2019, at Houston, Texas.

Lynn N. Hughes
United States District Judge